**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

PATRICK DABNEY

        Plaintiff,

v.

CHAD WOLF, ACTING
SECRETARY, DEPARTMENT OF
HOMELAND SECURITY,

        Defendant.

CIVIL ACTION
File No.:

**JURY TRIAL DEMANDED**

**COMPLAINT
FOR DAMAGES AND EQUITABLE RELIEF**

Plaintiff Patrick Dabney (hereinafter "Plaintiff") files his Complaint against

Defendant Chad Wolf, Acting Secretary, (hereafter "Defendant" or "DHS"),

showing the Court as follows:

**INTRODUCTION**

1.

This is an action for race, color, and sex discrimination, and reprisal for

protected EEO activity, and a hostile work environment, based on race, color, sex,

and reprisal, arising from, among other things, the Defendant's non-selection of Plaintiff for VAN FAM16-198425-I, VAN FAM16-198827-I, issuance of a letter altering the terms and conditions of Plaintiff's employment, and launching and subjecting Plaintiff to a witch hunt, or investigation that was a "searching out and deliberate harassment" of two African American black men who had engaged in protected activity and their associations (hereinafter "Discriminatory Investigation") in violation of Title VII of the Civil Rights Act of 1964, as amended, through 42 U.S.C. § 2000e–16. Plaintiff is seeking actual damages, injunctive and equitable relief, compensatory damages, attorneys' fees, and costs against Defendant.

## JURISDICTION AND VENUE

### 2.

Plaintiff incorporates by reference all of the preceding paragraphs of the Complaint.

### 3.

Plaintiff's discrimination, retaliation, and hostile work environment claims present federal questions over which the Court has jurisdiction. *See* 42 U.S.C. § 42 U.S.C. § 2000e–16. Jurisdiction is founded on 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1331. The court has jurisdiction to grant declaratory and further relief pursuant to 28 U.S.C. § 2201 and § 2202.

4.

This Court is an appropriate venue for all of Plaintiff's claims under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) and 42 U.S.C. § 42 U.S.C. § 2000e–16 because a substantial part of the events or omissions giving rise to these claims occurred in this District.   Defendant does business in the Northern District of Georgia, business records of Defendant are maintained in the Northern District of Georgia, some of the unlawful practices described herein occurred in the Northern District of Georgia, and Plaintiff worked and lived in the Northern District of Georgia at all relevant time. The Discriminatory Investigation occurred in the Northern District of Georgia.

## **THE PARTIES**

5.

Plaintiff incorporates by reference all of the preceding paragraphs of the Complaint.

6.

Plaintiff resides in the Northern District of Georgia. He was employed by Defendant at all relevant times.

7.

At all times material, Plaintiff was a black African American male.

8.

At all times material, Plaintiff engaged in protected activity and was associated with his supervisor, who engaged in oppositional activity.

9.

Defendant Chad Wolf is named in his capacity as the Acting Secretary of the United States Department of Homeland Security, and is sued herein in his official capacity.

10.

Plaintiff is an employee of Defendant, and was an employee of Defendant under § 42 U.S.C. § 2000e–16(a) at all material times.

11.

Defendant is and was at all times relevant hereto an employer and/or a department, agency, or unit covered by § 42 U.S.C. § 2000e–16(a).

## ADMINISTRATIVE PROCEEDINGS

12.

Plaintiff incorporates by reference all of the preceding paragraphs of the Complaint.

13.

Plaintiff has met all procedural requirements for filing this Complaint.

Plaintiff initiated EEO contact on April 7, 2017, and was timely. "The …
Commission shall extend the 45–day time limit in paragraph (a)(1) of this section
when … [Plaintiff] did not know . . . that the discriminatory matter or personnel
action occurred. . ." 29 C.F.R. § 1614.105 (a)(2). Plaintiff first became aware of the
non-selections on February 21, 2017. Forty-five days from February 21, 2017 was
April 7, 2017, the date of initial contact in this case. The claims are timely.

14.

Plaintiff submitted a Formal Charge of Discrimination on or about June 27,
2017, to the Defendant.

15.

Within ninety (90) calendar days from the date Plaintiff received the Agency's
final decision, Plaintiff timely filed the instant lawsuit.

16.

Plaintiff has thus met all procedural requirements for filing this complaint and
all of the claims in the lawsuit are properly before the Court.

**DEMAND FOR JURY TRIAL**

17.

Plaintiff incorporates by reference all of the preceding paragraphs of the
Complaint.

5

18.

Plaintiff demands a jury trial for all matters appropriate for jury trial in the Complaint.

## **STATEMENT OF FACTS**

19.

Plaintiff incorporates by reference all of the preceding paragraphs of the Complaint.

20.

Plaintiff began his employment with Defendant on or about May 2002, as an Federal Air Marshall. As of the relevant date, Plaintiff was employed by Defendant as Supervisor Federal Air Marshall since May 2008.

21.

At all times material, Plaintiff was an African American male, and his color is black.

22.

At all times material, upon information and belief, the Selecting Official or Officials for VAN FAM16-198425-I, VAN FAM16-198827-I was or were aware Plaintiff was an African American male, and his color is black.

23.

At all times material, upon information and belief, the Selecting Official or Officials for VAN FAM16-198425-I, VAN FAM16-198827-I was or were aware Plaintiff's then longtime supervisor was an African American male, and his color is black.

24.

At all times material, upon information and belief, the person or person who made the decision to issue a cease and desist letter and who made the decisions regarding the Discriminatory Investigation, to include launching it and subjecting Plaintiff to the Discriminatory Investigation, was or were aware Plaintiff was an African American male, and his color is black.

25.

At all times material, Plaintiff engaged in protected activity and was associated with his supervisor, who engaged in oppositional activity.

26.

At all times material, upon information and belief, the Selecting Official or Officials for VAN FAM16-198425-I, VAN FAM16-198827-I was or were aware Plaintiff engaged in protected activity and was associated with his supervisor, who engaged in oppositional activity.

27.

At all times material, upon information and belief, the person or person who made the decision to issue a cease and desist letter and made the decisions regarding the Discriminatory Investigation, to include launching it and subjecting Plaintiff to the investigation, was or were aware Plaintiff engaged in protected activity and was associated with his supervisor, who engaged in oppositional activity.

28.

Both of the selected candidates for FAM16-198425-I and FAM16-198827-I, were white Caucasian males.

29.

Plaintiff was qualified for the positions of FAM16-198425-I and FAM16-198827-I).

30.

Plaintiff was not selected for the positions.

31.

The Report of Investigation the Agency was required to conduct into Plaintiff's discrimination allegations did not identify the Selecting Officials ("SO"), if any, for the positions at issue: #FAM16-198425-I or FAM16-198827-I. The failure to include this information in the Report of Information was intentional and

unlawful under EEO regulations.

32.

"In accordance with instructions contained in Commission Management Directives, the agency shall develop an impartial and appropriate factual record upon which to make findings on the claims raised by the written complaint. An appropriate factual record is one that allows a reasonable fact finder to draw conclusions as to whether discrimination occurred. Agencies may use an exchange of letters or memoranda, interrogatories, investigations, fact-finding conferences or any other fact-finding methods that efficiently and thoroughly address the matters at issue…" 29 C.F.R. § 1614.108 (b). The Agency chose not to do this.

33.

At all times relevant, the Agency had to follow the legal requirements of 29 C.F.R. § 1614.108 (b).

34.

At all times relevant, the Agency knew of its obligations to follow the legal requirements of 29 C.F.R. § 1614.108(b).

35.

At all times relevant, the Agency understood its obligations to follow the legal requirements of 29 C.F.R. § 1614.108(b).

36.

At all times relevant, the Agency had to develop an impartial and appropriate factual record that efficiently and thoroughly address the matters at issue through the Report of Investigation.

37.

At all times relevant, the Agency knew of its obligations to develop an impartial and appropriate factual that efficiently and thoroughly address the matters at issue record through the Report of Investigation.

38.

At all times relevant, the Agency understood its obligations to develop an impartial and appropriate factual record that efficiently and thoroughly address the matters at issue through the Report of Investigation, but is concealing much evidence related to the Discriminatory Investigation refusing to even produce documents created during and because of the Discriminatory Investigation after requests from Plaintiff's counsel. The failure to conceal this relevant information was done to cover up discrimination and was knowingly done.

39.

At all times relevant, the Agency had to identify the SO or Selecting Officials for the claims in the Report of Investigation in this matter, but chose not to clearly

do so.

40.

At all times relevant, the Agency knew of its obligation to identify the decision maker for the Discriminatory Investigation and related decisions for the claims in the Report of Investigation, but as of today is still choosing to conceal this information by naming no actual responsible human but hiding behind group labels such as AGENCYUNIT.

41.

The Agency is withholding relevant information without justification.

42.

Upon information and belief, comparative data will show that the Agency does not take usually investigate anonymous complainants and disfavors harassment complaints based on race.

43.

Upon information and belief, the information will show the Agency does not properly address harassment complaints, but chose to investigate then unverifiable allegations not supported by any outside facts for unlawful reasons in this case, to include targeting two black African American men.

44.

Witness PERSON1 did not identify the SO in the ROI.

45.

Witness PERSON1, a panelist, did not believe he was a SO as PERSON1 did not even know if the selection process had an interview and described his "role" as "limited." He also said his role was to "make recommendations for selection."

46.

The Panels dealing with the candidates for VAN FAM16-198425-I, VAN FAM16-198827-I were Selection Referral Panels ("SRP"), not a SO because the SRP is a "group tasked by the SO with further evaluating the BQ candidates and making a selection recommendation to the SO."

47.

Witness PERSON2 did not identify the SO.

48.

No other witnesses from the Agency including other panel members offered testimony about the identity of the SO in the ROI.

49.

TSA MANAGEMENT DIRECTIVE No. 1100.30-26 required there to have been a SO for the positions in claims 1 and 2.

50.

The Report of Investigation did not identify the SO for the positions at issue: #FAM16-198425-I or FAM16-198827-I.

51.

The Agency, after the ROI was produced, appears to have changed its story and at one point now seemed to contend that the panels/SRPs were the SOs using a document not produced in the ROI, which the Agency produced as Agency Bates 792. The Agency has still failed to identify who had the "buck stops with me" decision and what his or her or their reason was for the non-selections. This pretextual as Agency documentation in has spot for the selecting official to sign, but that signature is blank. If the panel was the decision maker, many of the panelists did not think so; if the AGENCYUNIT2 was the decision maker which included PERSON5 and PERSON6, then the Agency wrongfully chose to deny the ROI Investigator access to PERSON5 and PERSON6, telling the Investigator PERSON5 and PERSON6 were not the responsible management officials so there was no need to get their information.

52.

Upon information and belief, the document was not a valid directive, had no legal effect, and did not supersede TSA MANAGEMENT DIRECTIVE No. 1100.30-26, which requires a SO, an employee with selection authority.

53.

The Agency did not produce the document at Agency Bates 792 or any substantially similar document in response to the Report of Investigation's investigator's request for "copies of all policies related to the selection processes used for FAM16-198425-I, FAM16-198827-I, Assistant Special Agent In-Charge (ASAC) positions." The Agency was obligated to produce the document at this point, but chose not to.

54.

Alternatively, if the document at Agency Bates 792 was effective, the change in procedure was made to cover the discriminatory tracks of the Agency for similar selections such as the selections at issue.  There was no legitimate reason to change the selection process as contemplated by Agency Bates 792 such that there was not a SO.

55.

At least some of the panelists did not believe they were SOs or making the selections.

56.

Even if the panels/SRPs were the SOs, the ROI does not explain the SOs' rationale: there is no record evidence for the individual rationales of panelists

PERSON3, PERSON4, PERSON1, or PERSON2.

57.

Upon information and belief, the Agency has failed to clearly identify who the selecting officials were under the relevant policy, or their actions were contrary to policy, and/or their actions were designed to evade the EEO process as placing decisions beyond questioning to one human witness or, at least, preventing objective examination in a way that reinforces the prejudices, unconscious or not, which Congress in Title VII sought to eradicate. The selection process appears to be unlawful under merit system principles.

59.

There is no legitimate reason that Plaintiff was not selected for #FAM16-198425-I or FAM16-198827-I, or that the selectees were. Plaintiff was substantially more qualified for the needs of the position than the selectees.

60.

Plaintiff was not selected for #FAM16-198425-I or FAM16-198827-I because of his race, color, and protected activity, including association with his long-standing supervisor who was a black African American male.

61.

Also, the Agency received an anonymous letter referring to Plaintiff and his

long-standing supervisor.

62.

After that, the Agency launched an unreasonable, expensive, expansive investigation against Plaintiff, among other things. That investigation appears to have revealed the allegations in the letter against Plaintiff were false, after much expense and expansion, though the Agency is choosing to conceal the fruits of the investigation.

63.

This investigation led to the questioning of many reports of Plaintiff, substantially harming his prior stellar professional reputation, went back for years, and was a "witch hunt," consistent with one definition provided by The Merriam-Webster.com Dictionary, because it was a "searching out and deliberate harassment" of two African American black men who had engaged in protected activity and their associations. To the extent the investigation was done to force Plaintiff's then long-standing supervisor from federal services or to harass him because of that person's race and protected activity with reckless regard to Plaintiff and given Plaintiff's association therewith, this was done because of Plaintiff's race and protected activity.

64.

The terms of letter provided no legitimate reason for the Agency to have launched the expensive and expansive investigation it did. Beyond the terms of the letter, the Agency had no information to believe there was any harassment by Plaintiff or to justify an investigation, especially of the scope executed.

65.

The letter also made allegations against the Ombudsman, AGENCYUNIT, and senior management but the Agency, but upon information and belief, did not look into those allegations, only investigating the African American men.

66.

The Agency had a legal obligation to identify the decision makers behind the Discriminatory Investigation during the Report of Investigation, but the Agency chose to conceal the information of which human or humans made the investigation-related decisions to cover up and disassemble for their unlawful actions, and discrimination based on race, color, and sex, retaliation based on protected activity, and harassment based on race, color, sex, and protected activity.

67.

There was no legitimate reason for the Agency to conceal the decision makers involved in the launching of the investigation and subsequent investigation-related decisions.

68.

On or around August 29, 2019, the Agency claimed "[AGENCYUNIT] initiated an investigation based on the ITRs."

69.

AGENCYUNIT is not a person.

70.

The Agency has not yet to date identified a person to accept responsibility for launching the Discriminatory Investigation and the harassment and scope and related investigation-related decisions, despite Plaintiff filing a Charge of Discrimination alleging the launching of the investigation and subjecting to him to the "witch hunt" was unlawfully motivated and subsequent litigation events.

71.

There is no legitimate reason for the Agency to have concealed the person or person's name.

72.

The Agency chose to conceal who from AGENCYUNIT, if anyone, chose to initiate the investigation or made investigation-related decisions to conceal the information to cover up and disassemble for their unlawful actions, and discrimination based on race, color, and sex, retaliation based on protected activity,

and harassment based on race, color, sex, and protected activity.

73.

Upon information, AGENCYUNIT did not investigate itself, apparently, even though there were allegations in the letter that AGENCYUNIT generally failed to properly investigate other claims. AGENCYUNIT also thus had a conflict and should not have done the Discriminatory Investigation but, upon information and belief, did so.

74.

The Agency has withheld documents reflecting the investigation from Plaintiff to cover its unlawful motivations.

74.

Although the Agency investigated the unknown allegations against Plaintiff and another African American male purportedly made on behalf of female employees, the Agency failed to investigate and follow its policies regarding Plaintiff's claims of racial harassment when he raised them.

75.

The investigation-related decisions were based on Plaintiff's race, color, sex, and protected activity.

76.

The Agency also issued Plaintiff a cease and desist letter, after receiving the letter from an unknown source but purportedly on behalf of "the women," that prohibited him from engaging in protected activity by restricting him from talking about allegations that he harassed women with anyone other than his supervisors. This was a per se violation of EEO law, overbroad, and there was no legitimate reason for this restriction. It unlawfully prohibited him from defending himself against false allegations, as the investigation harassed him.

## CLAIMS UNDER FEDERAL LAW FOR RELIEF AGAINST THE AGENCY

## COUNT I: HARASSMENT: HOSTILE WORK ENVIRONMENT

77.

Plaintiff re-alleges the preceding paragraphs as if set forth fully herein.

78.

Defendant subjected Plaintiff to harassment based on his race, color, sex, and protected activity. Defendant maintained a retaliatory and racially, color-based, and sexually hostile work environment in violation of Title VII.

79.

Plaintiff was obligated to work in an atmosphere that was hostile by virtue of unsolicited and unwelcome comments and conduct caused by the investigation and occurring as part of the investigation.

80.

This harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a working environment that was intimidating, insulting and abusive to Plaintiff, and, for that matter, to any objectively reasonable person.

81.

Defendant's actions would dissuade a reasonable person from engaging in protected activity. Harassment allegations alone carry a significant stigma and could be severe enough to affect a person's employment and reputation. That occurred here.

82.

Because of its failure to exercise reasonable care to prevent and/or take prompt and remedial action, and its deliberate indifference to unlawful activity, the Agency has intentionally engaged in unlawful employment practices in violation of Title VII.

83.

The effect of the conduct complained of herein has been to deprive Plaintiff of equal employment opportunity, and has otherwise adversely affected his status as an employee because of race, color, protected activity, and sex.

84.

As a direct and proximate result of the Agency's violation of Title VII, Plaintiff has been made the victim of acts that have adversely affected his psychological and physical well-being.

85.

The retaliatory actions of Defendant were calculated and designed to dissuade a reasonable employee from making or supporting a charge of discrimination.

86.

Plaintiff is entitled to the relief set forth in the prayer for relief below.

## COUNT II: DISCRIMINATION UNDER TITLE VII

87.

Plaintiff re-alleges the preceding paragraphs as if set forth fully herein.

88.

Defendant's actions towards Plaintiff including its failure to promote him and the issuance of a letter restricting the terms and conditions of his employment, and

an investigation leading to an adverse employment action was based on Plaintiff's race, color, and sex.

89.

Plaintiff is entitled to the relief set forth in the prayer for relief below.

## COUNT III. RETALIATION

90.

Plaintiff re-alleges the preceding paragraphs as if set forth fully herein.

91.

The conduct of Defendant with regard to Plaintiff constitutes retaliation for engaging in protected speech in violation of Title VII of the Civil Rights Act of 1964 as amended.

92.

Plaintiff is entitled to the relief set forth in the prayer for relief below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays this court:

(a) That Plaintiff be awarded a declaratory judgment that Defendant violated Title VII of the Civil Rights Act of 1964 as amended, and 42 U.S.C. § 2000e et seq..

(b) That Plaintiff have and recover from Defendant back pay and benefits, with pre-judgment interest thereon;

(c) That the Court reinstate Plaintiff into a position that he would have been promoted into but for Defendant's discrimination;

(d) That this court issue an injunction against Defendant prohibiting it from further discriminating against black African American male employees;

(e) That Plaintiff have and recover compensatory damages in an amount to be determined by a jury;

(f) That Plaintiff have and recover his attorney's fees and costs of litigation pursuant to Title VII and pursuant to 42 U.S.C. § 1988 and all other applicable federal law; and

**(g)** That any and other such further relief as this court or the finder of fact deems equitable and just be recovered by Plaintiff.

SOUTHWORTH, P.C.

Shaun C. Southworth
Georgia Bar No. 959122
Jesse L. Kelly
Georgia Bar No. 935869
Southworth, P.C.
1100 Peachtree ST NE, Suite 200

Atlanta, GA 30309
Voice: (404) 585-8095
Facsimile: (404) 393-4129

*Attorneys for Mr. Patrick Dabney*